## SAMUEL CLELAND & others *v.* SAMUEL HEDLY.

A court of equity will enjoin an action at law upon an award of arbitrators, and set it aside, upon proof, that after the hearing of both parties upon their respective claims, one of the arbitrators requested, and they all received, a statement in writing from one of the parties of new and different items of claim from any which had been presented by him at the hearing, in the absence of the other party, and without his knowledge or consent, notwithstanding the arbitrators swear, that the statement had no influence upon their award, and there is no imputation of fraud or corruption upon the arbitrators; such conduct on their part being contrary to natural equity as well as to the established course of proceeding, and opposed to the policy of the law with regard to the due administration of justice.

BILL IN EQUITY to enjoin a suit at law commenced against the complainant upon an award of arbitrators, and to set aside the award on the ground of improper conduct in the arbitrators; the bill alleging, that after the hearing, in the absence of, and without notice to, the complainant, they received from the respondent a written statement, containing new and additional items of claim against the complainant.

The cause came on to be heard at this term upon bill, answer, and proofs, which are however so fully stated in the opinion of the court, that it is deemed unnecessary to add anything to that statement here.

*H. S. Bartlett* and *T. A. Jenckes*, for complainants:—

1st. There has been such misconduct on the part of the arbitrators, not amounting to corruption, as to make the award void.

The reception of the account is fully established by the evidence. There is also evidence from one of the arbitrators, that this account was acted on, and a part of it allowed. The others have no positive recollection in relation to the matter. To receive it, was an evident mistake on the part of the arbi-

trators; to act upon it, was improper, without notice to the other party, and without the opportunity being given to him to appear, and, if necessary, to dispute it. The testimony shows a mistaken view of their duties, in the arbitrators, and of the rights of the complainants, and it shows, also, clear misconduct, not amounting to corruption. The principle that such acts and conduct make void an award, is fully recognized and sustained by the following authorities: 2 Story, Eq. Jurisp. 675; *Torrance* v. *Amsden*, 3 McLean, 509; *Allen* v. *Ranney*, 1 Conn. 569; *Rand* v. *Redington*, 13 N. H. 72; *Morgan* v. *Mather*, 2 Ves. Jr. 15; Caldwell on Arbitration, 208 *et seq.* and cases there cited.

In South Carolina, an award of commissioners appointed under a statute, has been set aside for mere irregularity in the proceedings. *Walker* v. *City Council*, 1 Bailey, Ch. 443. And further, as to the general principle, see *Lee* v. *Patillo*, 4 Leigh, 436.

2d. The introduction of this account, or of any testimony by one party, tending to affect the award, and its reception by the arbitrators, was a fraud or misrepresentation on the part of said party; was a non-observance of an agreement made by the parties; and was the cause of injustice to the other party. On these grounds, the award should be set aside. *Ludington* v. *Taft*, 10 Barb. S. C. 447; *Baird* v. *Crutchfield*, 3 Humph. 171; *Emerson* v. *Udall*, 13 Verm. 477; *Bulkley* v. *Star*, 2 Day, 552; *Gregory* v. *Seaman*, 1 Root, 367; and the case cited, supra, *Allen* v. *Ranney*, 1 Conn. 569.

3d. The reception of the account by the arbitrators, in the absence of one of the parties, is of itself a sufficient ground for setting aside the award. That the account was received, is established by the testimony of every witness examined, both those for the complainants and those for the respondent. *Shinnie* v. *Coil*, 1 McCord, Ch. 478; *McGehee* v. *McGehee*, 12 Ala. 83; *McCormick* v. *Blackford*, 4 Gratt. 133; *Graham* v. *Graham*, 12 Penn. State R. (2 Jones) 128; *McFarland* v. *Mathis*, 5 English, 560; *Hook* v. *Philbrick*, 3 Foster, 288; *Lincoln* v. *Taunton Man. Co.* 8 Cush. 415; *Hartshorn* v. *Cottrell*, 1 Green, Ch. 297, and cases there cited. In England, the rule, that acts similar to the receiving of this account invalidate an award

of arbitrators, has been adhered to with exceeding strictness. *Fetherstone* v. *Cooper*, 9 Ves. Jr. 67. An award has been set aside where the arbitrators, having given notice that no more testimony would be received, did receive more. *Walker* v. *Frobisher*, 6 Ves. Jr. 70. An award was set aside on the ground that *interviews* had taken place between the arbitrators and one party, in the absence of the other. The respondent in this case admits, in his deposition, that he had conversations with one of the arbitrators in reference to his claim against the complainant, Cleland. See *Harvey* v. *Shelton*, 7 Beav. 455 ; see also *In re Plews*, 14 Law J. 139 , 51 Eng. Com. Law R. 845. Two awards (under one reference) were set aside where testimony had been received in the absence of one of the parties ; and the court laid down the rule, that where an arbitrator *asks questions* or *receives statements* from a witness, in the absence of one party, the court will set the award aside *without noticing the nature of the statements.* *Dobson* v. *Groves*, 51 Eng. Com. Law R. (6 Q. B.) 637.

*Thurston* and *Ripley*, for the respondent :—

1st. A submission to arbitration being the voluntary act of the parties, an award made in conformity to such submission, unless gross partiality or corruption be shown to have influenced it, ought not to be avoided. Story, Eq. Jurisp. § 1454 ; *Knox* v. *Symonds*, 1 Ves. Jr. 369 ; *Burchell* v. *Marsh et al.* 17 How. 344 ; 7 Conn. 536 ; 1 Johns. Ch. 101 ; 4 Porter, 65 ; 3 Rand. 122 ; 1 Wash. 11 ; 1 Desaus. 340 ; 3 Ib. 297 ; 6 Leigh, 62 ; 1 McCord, 408. To impeach an award for corruption and misconduct of the arbitrators, the proof should be clear and conclusive. *Dougherty* v. *McWhorter*, 7 Yerg. 239 ; *Callant* v. *Downey*, 2 J. J. Marsh. 346 ; *Hardeman* v. *Burge*, 10 Yerg. 202. A mistake of fact must be such in general as the arbitrators would admit ; *Hartshorne* v. *Cottrell*, 1 Green, Ch. 297 ; and a mistake of law must be a plain one, and upon some material point. Ibid. Every reasonable intendment is to be made in favor of an award. *Ebert* v. *Ebert*, 5 Md. 353 ; 15 Ill. 561.

2d. The memorandum made by Hedly, after the second visit of the arbitrators to the works, at the request of one of them, of articles which had been there used by the complain-

ant, is not different in its nature from the account A, which had been before them.

3d. At all events, the presentation of the memorandum or account had no influence on the minds of the arbitrators, and did not prejudice the complainant.

4th. It was at most a mere irregularity, and does not come under the head of partiality, gross mistake, or fraud.

BRAYTON, J. The present bill is brought to set aside an award of arbitrators, made under a submission entered into between the parties, and to enjoin the defendant from prosecuting his suit thereon. The matter charged in the bill, so far as it is necessary to consider it here, is, that the arbitrators, after fully hearing the parties and the testimony by them respectively offered, received from one of the parties, the defendant in this bill, an account and statement of his claims against the plaintiff, Cleland, different from the accounts presented at the hearing; that this was done without the knowledge of Cleland and without his consent, and he was thereby prevented from adducing witnesses to disprove said claim; that the arbitrators proceeded to consider the said account, and allowed a portion of it, without hearing the said Cleland.

The answer denies that any account was presented which differed from the account presented to the arbitrators at the hearing, and upon which evidence had been offered before them, or that any such account was considered by them in making up their award, to the knowledge or belief of the respondent.

Upon the proof submitted in this cause, it appears, that at the time of the hearing, each party presented his account or written statement of the items of his claim against the other, and evidence was submitted by the parties respectively as to the claims so presented; that the parties were fully heard and the testimony closed, and the arguments of counsel submitted; but it was agreed at the conclusion of the cause before the arbitrators, that the arbitrators might, before making up their award, if they deemed it necessary, visit the works where the business had been carried on out of which the controversies between the parties grew, for the purpose of ascertaining for

themselves the quality and quantity of some of the articles referred to or charged in the accounts, and to get such information in regard to the several items of the accounts as might be obtained by personal inspection; and were at liberty also to call upon the parties, or either of them, for any explanation, upon giving notice to the parties of such intent; that in pursuance of this arrangement, the arbitrators did visit the works more than once, and make an examination; that at one of their visits the parties were present; and that at another visit, the defendant, Hedly, presented to one of the arbitrators an account which is made an exhibit in the case. All the testimony concurs in this, that the account was presented by Hedly, that it went before the referees, and that, without the knowledge or consent of Cleland. Whether it was considered by them or influenced their award, the witnesses differ. Green, one of the arbitrators, says, that he paid no regard to this account, or indeed to any of the accounts, but regarded the evidence submitted, and his own personal examination of the works, solely. Howlet, another arbitrator, says, that though he received the account, he did not regard it in making up his award. It was handed in as an explanation of the previous account, and a more particular itemization, as he expresses it, of the account; and that Hedly said, when he offered it, that it was a copy of the other account. Kendall, the other arbitrator, on the other hand, says, that it was considered, and that parts of it were allowed, to the amount of $200, and that he objected at the time to its being considered.

Upon an examination of the account, and comparing it with that before the arbitrators at the hearing, it is found to be entirely different, and, so far as can now be seen, is made up of matters not contained in the original account, but of additional items of claim against Cleland.

This is explained by the testimony of the defendant himself, who says, that this last account was made at the request of one of the arbitrators, (he does not say which,) and that it was given to Howlet; and that the purpose of it was, to include articles which had not been used at the time of the trial. The account was therefore not designed to be a mere recapitulation of the

matters in the former account, nor a mere itemization of them ; but to contain a statement of matters which were not, and could not have been, before the arbitrators, and as to which, as he swears, no evidence was offered to the referees. It was intended, we cannot doubt, by the defendant, to influence the determination of the referees in his favor.

The plaintiffs do not charge either corruption, or fraud, or partiality in the referees, but that the reception of the account from the defendant, without the knowledge of the plaintiff, Cleland, and without his consent, is conduct improper on their part; and the question here is, whether such misconduct on their part is sufficient, in a court of equity, to invalidate the award and entitle the plaintiff to the relief sought; and we think that it is. In the case of *Walker* v. *Frobisher*, 6 Ves. 70, the arbitrator heard the parties, and notified them that he should hear no more evidence. In the absence of the parties, he afterwards examined three witnesses on the part of the defendant. The arbitrator testified that it did not influence his award. Lord Eldon, admitting that he believed the arbitrator was not aware of any influence, said, " A judge must not be permitted to say whether evidence improperly admitted had or had not an effect upon his mind. The award may have done perfect justice, but upon general principles it cannot be supported." The principle of this case is affirmed in *Fetherstone* v. *Cooper*, 9 Ves. 67 ; but in this case the parties had notice, and the court held they were bound to attend. In the case of *Harvey* v. *Shelton*, 7 Beav. 445, the parties were heard upon certain accounts between them, and the books were left with an accountant to make up the accounts with the arbitrator. In the absence of one of the parties, the arbitrator called upon the other party for an explanation of some of the items in the account, and it was given. Lord Langdale says, " It is a principle in the ordinary administration of justice, that no party to a cause can be allowed to use any means whatever to influence the mind of the judge, which are not known to, and capable of being met by, the other. It is contrary to every principle to allow of such a thing."

The cases at law proceed upon the same principle, as indeed

they must. In *Dobson* v. *Graves*, 6 Ad. & El. (N. S.) 637, Lord Denman, in giving judgment, observed, " The arbitrator said, that nothing which passed in the meeting would influence his decision ; but I think that no information ought to be received at all under such circumstances, unless the arbitrator has an express power reserved for that purpose, or the parties agree that he shall exercise it." " It turns upon a point in the cause on which a bias may be given to his mind without the possibility of its being removed;" and in conclusion said, " We must abide by the general principle and oppose all attempts to explain whether the inquiry had any effect upon the decision. Whenever the case is brought within the general principle by a possibility that the arbitrator's mind may have been biased, there is a sufficient objection." In the case of *Plews* v. *Middleton*, 6 Ad. & El. (N. S.) 845, the question was, whether the award had been obtained by undue means, within the meaning of the statute ; and Lord Denman in that case said, " An award is obtained by undue means, if it be arrived at by a departure from natural justice in ascertaining the facts. Here the ascertaining of the facts by one arbitrator, apart from the others, and by the examination of interested witnesses, was a departure, not merely from the established course of proceeding, but from natural justice." Coleridge, J., in the same case, said, " The examination ought to have been in the presence of the parties and of all the arbitrators." In *Emery* v. *Owens*, 7 Gill, 488, the court say, " The conduct of the arbitrator in examining the books of Emery without notice to, and in the absence of the respondent, and without proof of the correctness of the statement and entries in the books, was conduct so inconsistent with all the principles of law recognized in the impartial administration of justice, as would vitiate the award. To hear the cause in his absence, and without notice, would be bad enough; but in his absence to decide it upon the declaration of his antagonist, surely is without precedent." The same general doctrine is announced in the case of *Strong* v. *Strong*, 9 Cush. 560, 574. That was a suit upon bond to perform an award. In giving judgment, the cases hereinbefore referred to were cited and fully approved; and Mr. Justice Cushing, who de-

livered the opinion, concludes, that arbitrators should, in the true spirit of impartiality, hold themselves beyond the improper interference of either party, or influence from any quarter; that when the case suggests the irregular interference of a party, and the consequent exercise of influence by him over the mind of an arbitrator, with or without prejudice to the right of the other party,—not to condemn such influence is to sanction it. "We conclude, therefore," says he, "that not corruption or fraud only in an arbitration, but also the exercise of undue or improper influence, applied by one of the parties to one or more of the arbitrators, by separate conference, or other ways of approach, is a lawful defence to an action on the award."

The result of these cases, (and many others might be added,) seems to be, that an award cannot be upheld, where the arbitrator has received evidence from witnesses, of which the party had no notice, and no opportunity to be heard in reply. Still less can it be upheld, where information has been received from a party to the cause, of which the other party has no notice, and which may, from its nature, bias the mind of the arbitrator in his judgment upon the facts; and the rule would be the same if the information came from the counsel or agent of the party. And the court will only inquire in such case, whether the communication be of such a nature as might influence the judgment of the arbitrator in the cause. If they find it to be of that character, they will not stop to inquire whether, in point of fact, he gave weight to it, or his award was varied by it. Nor will they permit the arbitrator to say, that evidence or information, improperly received by him, and which, from its nature, was calculated to, and more especially if it was designed to, influence his determination, did not have its natural effect upon his mind.

The policy of the law requires, in order to the due administration of justice, that the cause of no party litigant should be subject to be influenced by anything addressed to the mind of the judge, which he has no means of knowing, and has no opportunity to meet, either by argument or proof; and as Lord Langdale said, in *Harvey* v. *Shelton,* "this is a matter which concerns the administration of justice, and in which every party litigant is interested."

The misconduct alleged here, is the receiving of this account from the defendant without the knowledge or consent of Cleland, the plaintiff, containing further claims, and additional to any which had been presented to the referees, or as to which proof had been offered. The manner of the statement was calculated to prejudice their minds. It was a written statement, which was likely to be kept in mind by them. It was improperly received, inasmuch as it was received in the absence of, and without the knowledge or consent of, the other party. It might well have influenced the minds of the arbitrators, one or more of them, in making their award, and, from the evidence in the cause, it probably did.

In this state of the proof, and in view of the authorities and the principles which lie at the foundation of the administration of justice, we are obliged to say, that this award cannot be permitted to stand.

The award must be set aside, and the defendant enjoined from prosecuting his suit thereon, with costs.